**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No.  1:17-cv-02682-CRC |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7, Defendant United States Department of Justice respectfully moves for summary judgment.  The reasons for this motion are set forth in the attached Memorandum in Support of Defendant's Motion for Summary Judgment, Defendant's Statement of Material Facts as to Which There Is No Genuine Issue, and the Declaration of David M. Hardy.  A proposed order is also attached.

Date: June 13, 2018                    Respectfully submitted,

                                       CHAD A. READLER
                                       Acting Assistant Attorney General

                                       JESSIE K. LIU
                                       United States Attorney

                                       ELIZABETH J. SHAPIRO
                                       Deputy Branch Director

                                       */s/ Nikhel S. Sus*
                                       Nikhel S. Sus (D.C. Bar No. 1017937)
                                       Trial Attorney
                                       U.S. Department of Justice
                                       Civil Division, Federal Programs Branch
                                       20 Massachusetts Avenue N.W.
                                       Washington, D.C. 20530
                                       Tel.:   (202) 514-2071
                                       Fax:    (202) 616-8470
                                       Email: nikhel.s.sus@usdoj.gov

                                       *Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No.  1:17-cv-02682-CRC |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Civil Rule 7(h)(1), Defendant United States Department of Justice

("DOJ") respectfully submits the following statement of material facts as to which there is no

genuine issue:

**I.     Plaintiff's FOIA Request**

(1)     On August 17, 2017, Plaintiff Judicial Watch, Inc. submitted a Freedom of

Information Act ("FOIA") request to the Federal Bureau of Investigation ("FBI"), a component

of DOJ.  Declaration of David M. Hardy ("Hardy Decl.") ¶ 5; Compl. ¶ 5.

(2)     Plaintiff's FOIA request sought the following documents:

Any and all records regarding, concerning, or related to the assignment of FBI
Supervisor Peter Strzok to the special counsel's investigation led by former
Director Robert Mueller.

Any and all records regarding, concerning, or related to the reassignment of FBI
Supervisor Peter Strzok from the special counsel's investigation to another position
within the FBI.

This request includes, but is not limited to, any and all forms of SF-50 and/or SF-
52, as well as any and all related records of communication between any official,
employee, or representative of the FBI and any other individual or entity.

Hardy Decl. ¶ 5; Compl. ¶ 5.

(3)    Plaintiff requested a waiver of both search and duplication fees as a member of the news media, arguing for a waiver of fees because of a purported public interest in disclosure. Hardy Decl. ¶ 5.

(4)    Ultimately, no fees were incurred and so there was no need for the FBI to adjudicate Plaintiff's fee waiver request.  Hardy Decl. ¶ 5 n.3.

(5)    By letter dated August 22, 2017, the FBI acknowledged receipt of Plaintiff's request, assigned it FOIA Request No. 1382811-000, and advised that it was searching the indices of the Central Records System ("CRS") for information responsive to the request.  Hardy Decl. ¶ 6; Compl. ¶ 6.

(6)    By letter dated May 4, 2018, the FBI responded to Plaintiff's FOIA request.  The FBI reviewed 19 pages of responsive records and released nine pages; two pages were released in full and seven pages were released in part with information protected pursuant to FOIA Exemptions (b)(3), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E).  An additional three pages were withheld in full pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E).  The remaining pages originated with, or contained information concerning, another government agency ("OGA"); the FBI advised Plaintiff that it was consulting with that agency and would correspond with Plaintiff regarding those records when the consultation was complete.  Finally, the FBI informed Plaintiff of its right to appeal by filing an administrative appeal with OIP within ninety (90) days from the date of its letter.  Hardy Decl. ¶ 8.

(7)    By letter dated June 1, 2018, the FBI followed up with Plaintiff about the OGA consult.  The FBI advised Plaintiff that seven pages of responsive records had been reviewed and all pages were being released in whole or in part.  Specifically, six pages were released in full and one page was released in part with redactions pursuant to FOIA Exemptions (b)(6),

(b)(7)(C), and (b)(7)(E).  Finally, the FBI informed Plaintiff of its right to appeal the FBI's

determination by filing an administrative appeal with OIP within ninety (90) days from the date

of the FBI's letter.  This was the FBI's final response and release of responsive records.  Hardy

Decl. ¶ 9.

(8)     Thus, in response to Plaintiff's FOIA request, the FBI released a total of eight

pages in full and eight pages in part, and withheld three pages in full.  Hardy Decl. ¶ 10.

## II.     Search for Responsive Records

### A.     Background

(9)     David M. Hardy is the Section Chief of the FBI's Record/Information

Dissemination Section ("RIDS"), Information Management Division ("IMD").  Hardy Decl. ¶ 1.

(10)     Due to the nature of his official duties, Mr. Hardy is familiar with the procedures

followed by the FBI in responding to requests for information from its files pursuant to the

provisions of the FOIA, 5 U.S.C. § 552.  Specifically, he is aware of the FBI's response to

Plaintiff's FOIA request for records relating to Deputy Assistant Director ("DAD") Peter

Strzok's assignment to and from the Special Counsel's Office ("SCO").  Hardy Decl. ¶ 3.

### 1.     The Central Records System

(11)     The Central Records System ("CRS") is an extensive system of records consisting

of applicant, investigative, intelligence, personnel, administrative, and general files compiled and

maintained by the FBI in the course of fulfilling its integrated missions and functions as a law

enforcement, counterterrorism, and intelligence agency to include performance of administrative

and personnel functions.  The CRS spans the entire FBI organization and encompasses the

records of FBI HQ, FBI Field Offices, and FBI Legal Attaché Offices ("Legats") worldwide.

Hardy Decl. ¶ 11.

3

### a.    General Indices and Indexing

(12)    The general indices to the CRS are the index or "key" to locating records within the enormous amount of information contained in the CRS.  The CRS is indexed in a manner which meets the FBI's investigative needs and priorities, and allows FBI personnel to reasonably and adequately locate pertinent files in the performance of their law enforcement duties.  The general indices are arranged in alphabetical order and comprise an index on a variety of subject matters to include individuals, organizations, events, or other subjects of investigative interest indexed for future retrieval.  Hardy Decl. ¶ 13.

(13)    FBI Special Agents ("SA") and/or designated support personnel may index information in the CRS by individual (persons), by organization (organizational entities, places, and things), and by event (*e.g.,* a terrorist attack or bank robbery).  Indexing information in the CRS is based on operational necessity, and the FBI only indexes information considered relevant and necessary for future retrieval.  Accordingly, the FBI does not index every individual name or other subject matter in the general indices.  Hardy Decl. ¶ 14.

### b.    Automated Case Support and the Universal Case Index

(14)    Automated Case Support ("ACS") is an electronic, integrated case management system that became effective for FBIHQ and all FBI Field Offices and Legats on October 1, 1995.  As part of the ACS implementation process, over 105 million CRS records were converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices.  ACS has an operational purpose and design to

4

enable the FBI to locate, retrieve, and maintain information in its files in the performance of its myriad missions and functions.[1]  Hardy Decl. ¶ 15.

(15)    The Universal Index ("UNI") is the automated index of the CRS and provides all offices of the FBI a centralized, electronic means of indexing pertinent investigative information to FBI files for future retrieval via index searching.  Individual names are recorded with applicable identifying information such as date of birth, race, sex, locality, Social Security Number, address, and/or date of an event.  Moreover, ACS implementation built upon and incorporated prior automated FBI indices; therefore, a search employing the UNI application of ACS encompasses data that was already indexed into the prior automated systems superseded by ACS.  As such, a UNI index search in ACS is capable of locating FBI records well before its 1995 FBI-wide implementation to the present day in both paper and electronic format.[2] Currently, UNI consists of approximately 119.2 million searchable records and is updated daily with newly indexed material.  Hardy Decl. ¶ 16.

### 2.    ACS and Sentinel

(16)    Sentinel is the FBI's next generation case management system that became effective FBI-wide on July 1, 2012.  Sentinel provides a web-based interface to FBI users, and it includes the same automated application utilized in ACS.  After July 1, 2012, all FBI generated

---

[1] ACS and the next generation Sentinel system are relied upon by the FBI daily to fulfill essential functions such as conducting criminal, counterterrorism, and national security investigations; background investigations; citizenship and employment queries, and security screening, to include Presidential protection.

[2] Older CRS records not indexed into UNI as result of the 1995 ACS consolidation remain searchable by manual review of index cards, known as the "manual indices."  A search of the manual indices is triggered for requests on individuals if the person was born on or before January 1, 1958; and for requests seeking information about organizations or events on or before January 1, 1973.  Records created after these dates would be captured through a UNI search.

records are created electronically in case files via Sentinel; however, Sentinel did not replace

ACS and its relevance as an important FBI search mechanism.  Just as pertinent information was

indexed into UNI for records generated in ACS before July 1, 2012, when a record is generated

in Sentinel, information is indexed for future retrieval.  Moreover, there is an index data sharing

nexus between the Sentinel and ACS systems whereby information indexed into Sentinel is

replicated or "backfilled" into ACS.  In sum, the Sentinel case management system builds on

ACS and shares its operational purpose; Sentinel provides another portal to locate information

within the vast CRS for FBI records generated on or after July 1, 2012.  Hardy Decl. ¶ 17.

  **B.**  **Search for Records Responsive to Plaintiff's Request**

    **1.**  **Targeted Search of the Human Resources Division**

  (17)  While the FBI's acknowledgment letter stated that an index search was being

conducted, the FBI actually started searching in this case by contacting the Human Resources

Division ("HRD") on or about September 19, 2017 to locate records responsive to Plaintiff's

request because RIDS determined HRD, the division responsible for managing the personnel

actions of FBI employees, was the Division that would maintain responsive records.  HRD does

maintain DAD Strzok's personnel file and records; however, it located no personnel documents,

such as an SF-50, documenting DAD Strzok's assignment to or from the Special Counsel's

Office.  Hardy Decl. ¶ 18.

  (18)  After consulting with the FBI's Office of the General Counsel ("OGC") and

HRD, the FBI learned that at the time of DAD Strzok's assignment to and from the SCO, no SF-

50s/SF-52s or other formal paperwork was being generated within the FBI.  Specifically, being

assigned to the SCO is a job assignment rather than a formal personnel action, such as a detail,

transfer, or reassignment, and thus formal personnel paperwork is not required.  Hardy Decl. ¶ 19.

### 2.  CRS Search

(19)  <u>Index Searching, Generally</u>:  To locate CRS information, RIDS employs an index search methodology.  Index searches of the CRS are reasonably expected to locate responsive material within the vast CRS since the FBI indexes pertinent information into the CRS to facilitate retrieval based on operational necessity.  Given the broad range of indexed material in terms of both time frame and subject matter that it can locate in FBI files, the automated UNI application of ACS is the mechanism RIDS employs to conduct CRS index searches.  If a request seeks records possibly generated on or after July 1, 2012, an overlapping search of ACS via the UNI application and a Sentinel index search are performed at the litigation stage to ensure adequacy of the CRS index search.  Hardy Decl. ¶ 20.

(20)  <u>CRS Search and Results</u>: Following Plaintiff's lawsuit, RIDS conducted an index search in the CRS through ACS to locate DAD Strzok's personnel file.  RIDS reviewed the file maintained in the CRS but did not locate any responsive records documenting DAD Strzok's assignment to or from the Special Counsel's Office.  Hardy Decl. ¶ 21.

### 3.  Email Search

(21)  On or about February 6, 2017, the FBI also searched DAD Strzok's FBI email accounts for the period May 17, 2017 through August 11, 2017 (the date of the Special Counsel's appointment to the date of DAD Strzok's assignment from the SCO) for the terms "assignment," "reassignment," and "appointment" when used in conjunctions with "special counsel."  In other words, the search was designed to locate all emails containing the terms "special counsel" and "assignment"; "special counsel" and "reassignment"; and "special counsel" and "appointment."

The FBI's search located 19 pages of responsive records (emails and attachments).  Hardy Decl. ¶ 22.

(22)    The FBI found no information or leads logically leading to other locations where responsive records would likely be located.  Hardy Decl. ¶ 24.

## III.    Exemptions

(23)    All records responsive to Plaintiff's request were processed to achieve maximum disclosure consistent with the access provisions of the FOIA.  Every effort was made to provide Plaintiff with all material in the public domain as well as all reasonably segregable, non-exempt information in the responsive records.  The FBI reviewed all 19 pages of responsive records it located in its searches, which have been Bates-numbered sequentially – "FBI(17cv2682)-1" through "FBI(17cv2682)-19" – for ease of reference.  Of the 19 pages, eight pages were released in full, eight pages were released in part, and three pages were withheld in full.  Exempt information was protected pursuant to FOIA Exemptions (b)(3), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E).  Further description of the information withheld, beyond what is provided in the Hardy Declaration, could identify the actual exempt information the FBI withheld.  Hardy Decl. ¶ 25.

(24)    The FBI has provided an Exemption Application Index which allows the Court and Plaintiff to view a page-by-page breakdown of the applied exemptions.  The FBI has also provided a chart explaining the exemption codes the agency used to categorize the information withheld pursuant to various FOIA exemptions.  *See* Hardy Decl. ¶¶ 25-28.

(25)    The Hardy Declaration explains the specific grounds for each of the FBI's exemption claims in detail.  *See* Hardy Decl. ¶¶ 25-61.

## IV.     Segregation

(26)     The FBI provided Plaintiff all non-exempt records or portions of records

responsive to its FOIA request.  During the processing of Plaintiff's request, each responsive

page was individually examined to identify non-exempt information that could be reasonably

segregated and released.  Hardy Decl. ¶¶ 62-64.


Date: June 13, 2018                        Respectfully submitted,

                                           CHAD A. READLER
                                           Acting Assistant Attorney General

                                           JESSIE K. LIU
                                           United States Attorney

                                           ELIZABETH J. SHAPIRO
                                           Deputy Branch Director

                                           */s/ Nikhel S. Sus*
                                           Nikhel S. Sus (D.C. Bar No. 1017937)
                                           Trial Attorney
                                           U.S. Department of Justice
                                           Civil Division, Federal Programs Branch
                                           20 Massachusetts Avenue N.W.
                                           Washington, D.C. 20530
                                           Tel.:    (202) 514-2071
                                           Fax:     (202) 616-8470
                                           Email: nikhel.s.sus@usdoj.gov

                                           *Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JUDICIAL WATCH, INC.,                    )
                                               )
                 Plaintiff,                    )
       v.                                        )          No.  1:17-cv-02682-CRC
                                               )
U.S. DEPARTMENT OF JUSTICE,          )
                                               )
                 Defendant.                    )
_____ )

**<u>MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I. The FBI Conducted A Reasonable Search ..................................................................... 3

II. The FBI Properly Withheld Information Pursuant To FOIA Exemptions ........................ 6

 A. FOIA Exemption 3 ............................................................................................ 8

 B. FOIA Exemptions 7 And 6……………………………………………………………11

  1. FOIA Exemption 7(A) ....................................................................... 11

  2. FOIA Exemptions 7(C) And 6 ................................................................ 13

   i. Names And Identifying Information Of FBI Special Agents And Support Personnel ................................................................ 16

   ii. Names And Identifying Information Of Third Parties Merely Mentioned In Responsive Documents ............................. 18

   iii. Names And Identifying Information Of Non-FBI Federal Government Personnel ................................................................ 18

  3. FOIA Exemption 7(E) .............................................................................. 19

   i. Location And Identity Of FBI And Joint Units ............................ 20

   ii. Investigative Targets And Strategies Of The FBI Counterintelligence Division ........................................................ 20

   iii. Internal FBI Secure Email Addresses ........................................... 21

   iv. Specific Counterintelligence Techniques Utilized To Conduct National Security Investigations .................................... 22

III. The FBI Released All Reasonably Segregable Information ............................................. 22

CONCLUSION ...................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*ACLU v. DOD*,
   628 F.3d 612 (D.C. Cir. 2011) ................................................................................. 8

*Al-Turki v. DOJ*,
   175 F. Supp. 3d 1153 (D. Colo. 2016) ................................................................... 20

*Allard K. Lowenstein Int'l Human Rights Project v. DHS*,
   626 F.3d 678 (2d Cir. 2010) .................................................................................. 21

*Am. Assoc. of Women, Inc. v. DOJ*,
   167 F. Supp. 3d 136 (D.D.C. 2016) ........................................................................ 9

*Am. Civil Liberties Union v. DOJ*,
   265 F. Supp. 2d 20 (D.D.C. 2003) .......................................................................... 7

*Am. Civil Liberties Union v. DOJ*,
   655 F.3d 1 (D.C. Cir. 2011) ........................................................................... 12, 13

*Ancient Coin Collectors Guild v. U.S. Dep't of State*,
   641 F.3d 504 (D.C. Cir. 2011) ................................................................................ 3

*Associated Press v. FBI*,
   265 F. Supp. 3d 82 (D.D.C. 2017) ........................................................................ 10

*Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*,
   830 F.2d 331 (D.C. Cir. 1987) ................................................................................ 8

*Baez v. DOJ*,
   647 F.2d 1328 (D.C. Cir. 1980) ...................................................................... 15, 17

*Baker & Hostetler LLP v. U.S. Dep't of Commerce*,
   473 F.3d 312 (D.C. Cir. 2006) ................................................................................ 3

*Blackwell v. FBI*,
   646 F.3d 37 (D.C. Cir. 2011) ........................................................... 11, 19, 20, 21

*Blackwell v. FBI*,
   680 F. Supp. 2d 79 (D.D.C. 2010), *aff'd*, 646 F.3d 37 (D.C. Cir. 2011) ..................... 20, 21, 22

*Boyd v. Criminal Div. of DOJ*,
   475 F.3d 381 (D.C. Cir. 2007) .............................................................................. 12

*Brown v. EPA*,
   384 F. Supp. 2d 271 (D.D.C. 2005) ................................................................. 15, 17

*Chambers v. U.S. Dep't of Interior*,
  568 F.3d 998 (D.C. Cir. 2009) ................................................................. 4

*CIA v. Sims*,
  471 U.S. 159 (1985) .................................................................. 8, 9, 10

*Cleveland v. United States*,
  128 F. Supp. 3d 284 (D.D.C. 2015) ......................................................... 6

*Cooper v. DOJ*,
  169 F. Supp. 3d 20 (D.D.C. 2016) ..................................................... 14, 15

*Ctr. for Nat'l Sec. Studies v. DOJ*,
  331 F.3d 918 (D.C. Cir. 2003) ........................................................... 6, 7

*DiBacco v. U.S. Army*,
  795 F.3d 178 (D.C. Cir. 2015) ............................................................. 3

*DOD v. FLRA*,
  510 U.S. 487 (1994) .................................................................. 13, 14

*DOJ v. Reporters Comm. for Freedom of the Press*,
  489 U.S. 749 (1989) ..................................................................... 13

*Elec. Privacy Info. Ctr. v. NSA*,
  678 F.3d 926 (D.C. Cir. 2012) ............................................................. 6

*Fitzgibbon v. CIA*,
  911 F.2d 755 (D.C. Cir. 1990) ............................................................. 7

*Frugone v. CIA*,
  169 F.3d 772 (D.C. Cir. 1999) ............................................................. 7

*Giovanetti v. FBI*,
  174 F. Supp. 3d 453 (D.D.C. 2016) ....................................................... 15

*Halpern v. FBI*,
  181 F.3d 279 (2d Cir. 1999) .............................................................. 14

*Iturralde v. Comptroller of Currency*,
  315 F.3d 311 (D.C. Cir. 2003) ............................................................. 3

*Johnson v. Exec. Office for U.S. Attorneys*,
  310 F.3d 771 (D.C. Cir. 2002) ........................................................... 23

*Jones v. FBI*,
  41 F.3d 238 (6th Cir. 1994) ............................................................... 7

*Juarez v. DOJ,*
    518 F.3d 54 (D.C. Cir. 2008) ................................................................................. 11

*Keys v. DOJ,*
    830 F.2d 337 (D.C. Cir. 1987) ................................................................................. 7

*King v. DOJ,*
    830 F.2d 210 (D.C. Cir. 1987) ................................................................................. 7

*Kurdyukov v. U.S. Coast Guard,*
    578 F. Supp. 2d 114 (D.D.C. 2008) ................................................. 14, 15, 17, 22

*Larson v. Dep't of State,*
    565 F.3d 857 (D.C. Cir. 2009) ............................................................................ 6, 8

*Leopold v. CIA,*
    106 F. Supp. 3d 51 (D.D.C. 2015) ...................................................................... 2, 9

*Light v. DOJ,*
    968 F. Supp. 2d 11 (D.D.C. 2013) ...................................................................... 2, 3

*Maynard v. CIA,*
    986 F.2d 547 (1st Cir. 1993) .................................................................................... 7

*McClanahan v. DOJ,*
    204 F. Supp. 3d 30 (D.D.C. 2016), *aff'd,* 712 F. App'x 6 (D.C. Cir. 2018) ......... 5, 9

*McCready v. Nicholson,*
    465 F.3d 1 (D.C. Cir. 2006) ..................................................................................... 4

*Mead Data Ctr. v. U.S. Dep't of Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) .............................................................................. 22

*Meeropol v. Meese,*
    790 F.2d 942 (D.C. Cir. 1986) ................................................................................. 3

*Military Audit Project v. Casey,*
    656 F.2d 724 (D.C. Cir. 1981) ................................................................................. 3

*Miller v. DOJ,*
    562 F. Supp. 2d 82 (D.D.C. 2008) ................................................................. 20, 22

*Moore v. Bush,*
    601 F. Supp. 2d 6 (D.D.C. 2009) .......................................................................... 14

*Morley v. CIA,*
    508 F.3d 1108 (D.C. Cir. 2007) ............................................................................... 7

*Nat'l Archives & Records Admin. v. Favish*,
    541 U.S. 157 (2004) ......................................................................................... 14

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
    879 F.2d 873 (D.C. Cir. 1989) ............................................................... 15, 17

*Nat'l Sec. Archive Fund, Inc. v. CIA*,
    402 F. Supp. 2d 211 (D.D.C. 2005) ................................................................ 22

*Oglesby v. U.S. Dep't of the Army*,
    920 F.2d 57 (D.C. Cir. 1990) ........................................................................... 3

*Perrone v. FBI*,
    908 F. Supp. 24 (D.D.C. 1995) ......................................................... 20, 21, 22

*Perry v. Block*,
    684 F.2d 121 (D.C. Cir. 1982) ......................................................................... 4

*Pub. Emps. For Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*,
    740 F.3d 195 (D.C. Cir. 2014) ....................................................................... 11

*Queen v. Gonzales*,
    2005 WL 3204160 (D.D.C. Nov. 15, 2005) ..................................................... 7

*Reed v. NLRB*,
    927 F.2d 1249 (D.C. Cir. 1991) ..................................................................... 13

*Rosenberg v. DOD*,
    67 F. Supp. 3d 219 (D.D.C. 2014) ................................................................... 6

*Roth v. DOJ*,
    642 F.3d 1161 (D.C. Cir. 2011) ..................................................................... 13

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ....................................................................... 4

*Schrecker v. DOJ*,
    349 F.3d 657 (D.C. Cir. 2003) ...................................................... 14, 15, 16, 18

*Shapiro v. DOJ*,
    37 F. Supp. 3d 7 (D.D.C. 2014) ....................................................................... 9

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) ..................................................................... 14

*U.S. Dep't of State v. Wash. Post Co.*,
    456 U.S. 595 (1982) ....................................................................................... 13

*Weisberg v. DOJ*,
  745 F.2d 1476 (D.C. Cir. 1984) .................................................................................. 3

*Wilbur v. CIA*,
  355 F.3d 675 (D.C. Cir. 2004) .................................................................................... 4

*Wolf v. CIA*,
  473 F.3d 370 (D.C. Cir. 2007) ................................................................................. 6, 7

**STATUTES**

5 U.S.C. § 102A ........................................................................................................... 8, 9

5 U.S.C. § 552 ........................................................................................................... *passim*

50 U.S.C. § 3024 ........................................................................................................ 8, 10

## INTRODUCTION

In this Freedom of Information Act ("FOIA") suit, Plaintiff Judicial Watch, Inc. seeks documents from the Federal Bureau of Investigation ("FBI") relating to the assignment of Peter Strzok to and from the investigation overseen by Special Counsel Robert S. Mueller III.  As outlined in the attached Declaration of David M. Hardy (Chief of FBI's Record/Information Dissemination Section ("RIDS")), the FBI conducted a thorough search of all locations likely to contain responsive records, and produced all responsive, non-exempt records identified.  The Hardy Declaration also provides a detailed justification for each FOIA exemption invoked, demonstrating that the agency properly withheld (1) information protected from disclosure by statute, pursuant to Exemption 3; and (2) information compiled for law enforcement purposes whose disclosure could reasonably be expected to (a) interfere with an ongoing investigation, (b) constitute an unwarranted invasion of personal privacy, or (c) reveal techniques, procedures, or guidelines for law enforcement investigations whose disclosure could risk circumvention of the law, pursuant to Exemptions 7(A), 7(C), 6, and 7(E).

Because Defendant has fully satisfied its obligations under FOIA, the Court should grant its motion for summary judgment.

## BACKGROUND

By letter dated August 17, 2017, Plaintiff submitted a FOIA request to the FBI, a component of Defendant Department of Justice ("DOJ"), requesting:

> Any and all records regarding, concerning, or related to the assignment of FBI Supervisor Peter Strzok to the special counsel's investigation led by former Director Robert Mueller.

> Any and all records regarding, concerning, or related to the reassignment of FBI Supervisor Peter Strzok from the special counsel's investigation to another position within the FBI.

1

This request includes, but is not limited to, any and all forms of SF-50 and/or SF-52, as well as any and all related records of communication between any official, employee, or representative of the FBI and any other individual or entity.

Declaration of David M. Hardy ("Hardy Decl.") ¶ 5; Compl. ¶ 5.  The FBI acknowledged receipt of Plaintiff's request by letter dated August 22, 2017.  Hardy Decl. ¶ 6; Compl. ¶ 6.

Plaintiff instituted this suit against DOJ on December 14, 2017, alleging that the agency violated FOIA by failing to timely produce documents responsive to its request.  Compl. ¶¶ 8-11.

By letter dated May 4, 2018, the FBI responded to Plaintiff's FOIA request.  Hardy Decl. ¶ 8.  The FBI identified 19 pages of responsive records and released nine of those pages.  *Id.*  Of those nine pages, the agency released two pages in full, and seven pages in part, with redactions pursuant to FOIA Exemptions (b)(3), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E); and withheld three pages in full pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E).  *Id.*  Regarding the remaining seven pages, the FBI deemed it necessary to consult another agency and so advised Plaintiff.  *Id.*

By letter dated June 1, 2018, the FBI released the remaining seven pages about which it consulted the other agency.  *Id.* ¶ 9.  Specifically, it released six pages in full and one page in part with redactions pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E).  *Id.*  This was the FBI's final response and release of responsive records.  *Id.*

In total, the FBI released eight pages in full and eight pages in part, and withheld three pages in full.  *Id.* ¶ 10.

## ARGUMENT

"FOIA cases [are] typically and appropriately are decided on motions for summary judgment."  *Leopold v. CIA*, 106 F. Supp. 3d 51, 55 (D.D.C. 2015).  A court reviews an agency's response to a FOIA request *de novo*.  5 U.S.C. § 552(a)(4)(B).  "The defendant in a FOIA case

must show that its search for responsive records was adequate, that any exemptions claimed

actually apply, and that any reasonably segregable non-exempt parts of records have been

disclosed after redaction of exempt information." *Light v. DOJ*, 968 F. Supp. 2d 11, 23 (D.D.C.

2013). The "court may award summary judgment solely on the basis of information provided by

the department or agency in affidavits or declarations when the affidavits or declarations

describe 'the documents and the justifications for nondisclosure with reasonably specific detail,

demonstrate that the information withheld logically falls within the claimed exemption, and are

not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"

*Id.* at 22 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

## I.     The FBI Conducted A Reasonable Search

The FBI has provided a detailed declaration demonstrating that it conducted a reasonable

search for responsive records, and is therefore entitled to summary judgment on this issue. An

agency is entitled to summary judgment on the adequacy of its search if it "demonstrate[s] that it

made a 'good faith effort to conduct a search . . . using methods which can be reasonably

expected to produce the information requested.'" *DiBacco v. U.S. Army*, 795 F.3d 178, 188

(D.C. Cir. 2015) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

"There is no requirement that an agency search every record system." *Oglesby*, 920 F.2d at 68.

Indeed, "the issue to be resolved is not whether there might exist any other documents possibly

responsive to the request, but rather whether the *search* for those documents was *adequate*."

*Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original). The search is

thus evaluated "not by the fruits of the search, but by the appropriateness of the methods used to

carry out the search." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514

(D.C. Cir. 2011) (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir.

2003)).  In short, "[a] search need not be perfect, only adequate, and adequacy is measured by

the reasonableness of the effort in light of the specific request."  *DiBacco*, 795 F.3d at 194-95

(quoting *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986)).

     An agency can obtain summary judgment by submitting "reasonably detailed,

nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. U.S. Dep't of

Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006).  Such affidavits are sufficient if they "set[] forth

the search terms and the type of search performed, and aver[] that all files likely to contain

responsive materials (if such records exist) were searched."  *Chambers v. U.S. Dep't of Interior*,

568 F.3d 998, 1003 (D.C. Cir. 2009) (quoting *McCready v. Nicholson*, 465 F.3d 1, 14 (D.C. Cir.

2006)).  This standard is not demanding.  "[I]n the absence of countervailing evidence or

apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method

of the search conducted by the agency will suffice . . . ."  *Perry v. Block*, 684 F.2d 121, 127

(D.C. Cir. 1982).  "Agency affidavits are accorded a presumption of good faith, which cannot be

rebutted by 'purely speculative claims about the existence and discoverability of other

documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation

omitted); *see also Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) ("[M]ere speculation that

as yet uncovered documents might exist[] does not undermine the determination that the agency

conducted an adequate search for the requested records.").

     Here, the Hardy Declaration demonstrates that the FBI conducted a thorough and

reasonable search for responsive records.  As that declaration explains, the FBI's search had

three components:

     **1.**  The FBI started its search with the Human Resources Division—a logical choice since

Plaintiff's FOIA request seeks personnel records of an FBI employee (Deputy Assistant Director

4

Strzok), and the Human Resources Division is responsible for managing FBI's personnel actions. Hardy Decl. ¶ 18.  Although the Human Resources Division does maintain Mr. Strzok's personnel file and records, it located no records, such as an SF-50, documenting his assignment to or from the Special Counsel's Office ("SCO").  *Id.*  After further investigation, the FBI determined that that at the time of Mr. Strzok's assignment to and from the SCO, no SF-50s, SF-52s, or other formal paperwork were generated to document such action.  *Id.* ¶ 19.  That is because "being assigned to the SCO is a job assignment rather than a formal personnel action, such as a detail, transfer, or reassignment, and thus formal personnel paperwork is not required."  *Id.*

    **2.**  The FBI conducted an "index search" of its Central Records System to locate Mr. Strzok's personnel file.  *Id.* ¶ 21.  Index searches of the Central Records System are reasonably expected to locate responsive material within the vast system, since the FBI indexes pertinent information into the system to facilitate retrieval based on operational necessity.  *Id.* ¶ 20.  After performing this search, the FBI located and reviewed Mr. Stzok's personnel file, but did not identify any responsive records documenting his assignment to or from the SCO.  *Id.* ¶ 21.

    **3.**  The FBI searched Mr. Strzok's FBI email accounts for the period May 17, 2017, through August 11, 2017 (i.e., the date of the Special Counsel's appointment to the date of Mr. Strzok's assignment from the SCO investigation), for the terms "assignment," "reassignment," and "appointment" when used in conjunction with "special counsel."  *Id.* ¶ 22.  This search located 19 pages of responsive records (emails and attachments), *id.*, of which Defendant produced non-exempt portions to Plaintiff.  The FBI found no information or leads logically leading to other locations where responsive records would likely be found.  *Id.* ¶ 24.

The Hardy Declaration thus provides a "reasonably detailed" explanation of the FBI's search efforts, including the methods and search terms employed, the locations searched, the rationale for choosing those locations, and—going beyond what FOIA even requires—an explanation of why certain records do not exist.  The declaration readily demonstrates that the FBI's search was reasonably calculated to locate all responsive records.  Courts routinely enter summary judgment in the Government's favor based on similar (or less detailed) agency declarations.  *See, e.g.*, *McClanahan v. DOJ*, 204 F. Supp. 3d 30, 47 (D.D.C. 2016), *aff'd*, 712 F. App'x 6 (D.C. Cir. 2018); *Cleveland v. United States*, 128 F. Supp. 3d 284, 297 (D.D.C. 2015); *Rosenberg v. DOD*, 67 F. Supp. 3d 219, 225 (D.D.C. 2014).  Defendant is therefore entitled to summary judgment on the adequacy of its search.

## II.     The FBI Properly Withheld Information Pursuant To FOIA Exemptions

Defendant is also entitled to summary judgment as to the propriety of its exemption claims.  "An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit."  *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).  "[S]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (citation omitted).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible."  *Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012) (quoting *Larson*, 565 F.3d at 862).

In this case, the information withheld "implicat[es] national security, a uniquely executive purview."  *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926-27 (D.C. Cir. 2003)

(noting that "both the Supreme Court and this Court have expressly recognized the propriety of deference to the executive in the context of FOIA claims which implicate national security"); *see also Larson*, 565 F.3d at 865 ("Today we reaffirm our deferential posture in FOIA cases regarding the 'uniquely executive purview' of national security."). The D.C. Circuit has "consistently deferred to executive affidavits predicting harm to . . . national security, and ha[s] found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927. "[I]n the national security context," therefore, "the reviewing court must give 'substantial weight'" to agency declarations. *Am. Civil Liberties Union* ("*ACLU*") *v. DOJ*, 265 F. Supp. 2d 20, 27 (D.D.C. 2003) (quoting *King v. DOJ*, 830 F.2d 210, 217 (D.C. Cir. 1987)); *see also Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999) (stating that because "courts have little expertise in either international diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable concerns" about the harm that disclosure could cause to national security); *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) (holding that the district court erred in "perform[ing] its own calculus as to whether or not harm to the national security or to intelligence sources and methods would result from disclosure"). In according such deference, "a reviewing court must take into account . . . that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm." *Wolf*, 473 F.3d at 374 (citation omitted). Moreover, the deference owed in cases like this one applies to all relevant exemptions "so long as the government's declarations raise legitimate concerns that disclosure would impair national security." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 928.

The Hardy Declaration provides detailed justifications for all information the FBI has withheld as exempt. *See* Hardy Decl. ¶¶ 25-61. It includes coded categories of exemptions

detailing the nature of information withheld pursuant to applicable FOIA exemptions, a summary of the content of the records, and a summary of the bases for withholdings.  *See id.*  Courts have repeatedly accepted similar submission from the FBI and other agencies.[3]  Defendant is thus entitled to summary judgment on each of its exemption claims.

### A.      FOIA Exemption 3

The FBI properly invoked Exemption 3.[4]  Exemption 3 covers information that is protected by a separate statute, provided that such statute "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A).  The "purpose of Exemption 3 [is] to assure that Congress, not the agency, makes the basic nondisclosure decision."  *Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*,  830 F.2d 331, 336 (D.C. Cir. 1987); *see also id.* ("[T]he policing role assigned to courts in a[n Exemption 3] case is reduced.").  Following the Supreme Court's decision in *CIA v. Sims*, 471 U.S. 159 (1985), courts apply a two-pronged inquiry when evaluating Exemption 3 claims.  *See id.* at 167-68.  First, the court must determine whether the statute qualifies as an exempting statute under Exemption 3.  *Id.*  Second, the court decides whether the withheld material falls within the scope of that exempting statute.  *Id.*

Both *Sims* requirements are met here.  First, the FBI has properly invoked § 102A(i)(1) of the National Security Act of 1947 (the "Act") as grounds for its Exemption 3 claim.  That statute

---

[3] *See, e.g.*, *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007); *Keys v. DOJ*, 830 F.2d 337, 349-50 (D.C. Cir. 1987); *Maynard v. CIA*, 986 F.2d 547, 559 & n.13 (1st Cir. 1993); *Jones v. FBI*, 41 F.3d 238, 242-43 (6th Cir. 1994); *Queen v. Gonzales*, 2005 WL 3204160, at *3 (D.D.C. Nov. 15, 2005).

[4] The FBI invoked Exemption 3 on Bates-numbered pages FBI(17-cv-2682)-1, -3, and -6.

8

provides that the "Director of National Intelligence [("DNI")] shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1); *see* Hardy Decl. ¶ 30.  It further directs the DNI to "establish and implement guidelines for the intelligence community . . . [for] [c]lassification of information under applicable law, Executive orders, or other Presidential directives." § *Id.* § 3024(i)(2).  The Act is an exempting statute for purposes of Exemption 3, satisfying the first *Sims* requirement. *See, e.g.*, *ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Larson*, 565 F.3d at 865.  And because the "FBI is a member of the intelligence community," its obligation to protect intelligence sources and methods falls within the Act's ambit. *Shapiro v. DOJ*, 37 F. Supp. 3d 7, 26 (D.D.C. 2014) (FBI materials that "relates to intelligence sources and methods" are protected from disclosure pursuant to Exemption 3 and § 102A(i)(1)); *McClanahan*, 204 F. Supp. 3d at 48-51 (same); *Am. Assoc. of Women, Inc. v. DOJ*, 167 F. Supp. 3d 136, 142-43 (D.D.C. 2016) (same); *see also* Hardy Decl. ¶ 31.

The second *Sims* requirement is also met, because the withheld material falls comfortably within § 102A(i)(1)'s expansive protection of "intelligence sources and methods." *See Sims*, 471 U.S. at 167-68.  The Supreme Court has recognized the "broad sweep of [§ 102A(i)(1)'s] statutory language," as well as the lack of any "limiting language." *Sims*, 471 U.S. at 169; *see also id.* at 169-70 ("Congress simply and pointedly protected all sources of intelligence that provide, or are engaged to provide, information the Agency needs to perform its statutory duties with respect to foreign intelligence.  The plain statutory language is not to be ignored.").  And courts in this Circuit have gone even further in giving § 102A(i)(1) an expansive reading.  As Judge Boasberg recently summarized:

> The D.C. Circuit has interpreted this provision broadly, holding that material is properly withheld under the Act if it "*relates* to intelligence sources and methods," or "can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods."  Courts have also recognized that the Act's protection of

> sources and methods is a "near-blanket FOIA exemption," which includes the "power to withhold superficially innocuous information on the ground that it might enable an observer to discover the identity of an intelligence source or method." This is so because in the intelligence context "bits and pieces of data may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself." The Supreme Court has also warned that "it is the responsibility of the [intelligence community], not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the . . . intelligence-gathering process."

*Leopold*, 106 F. Supp. 3d at 57-58. "The Act presents an easier hurdle for the agency under Exemption 3 than does Executive Order 13,526 under Exemption 1, in that it does not require the FBI to determine that release of the information could reasonably be expected to result in damage to national security." *Associated Press v. FBI*, 265 F. Supp. 3d 82, 97 (D.D.C. 2017).

Here, the "FBI determined that intelligence sources and methods would be revealed if the redacted information was disclosed to Plaintiff," because the redacted information discusses the "structure and organization of the FBI's Counterintelligence Division, and its methods and processes for conducting counterintelligence investigations." Hardy Decl. ¶¶ 32-33. Although Exemption 3 does not require the agency to articulate the potential harm from disclosure, Mr. Hardy did so, concluding that "revelation of this internal information risks exposing intelligence methods (as well as law enforcement techniques and procedures as protected under Exemption (b)(7)(E)) that could reasonably be expected to undermine the effectiveness of the FBI's counterintelligence program and investigative efforts." *Id.* ¶ 33. Because the FBI is prohibited from disclosing this information under 50 U.S.C. § 3024(i)(1), it was properly withheld under Exemption 3 (and Exemption 7(E) where applicable). *See id.* ¶ 32; *Sims*, 471 U.S. at 179 ("The decisions of the Director, who must of course be familiar with 'the whole picture,' as judges are not, are worthy of great deference given the magnitude of the national security interests and potential risks at stake."). Summary judgment is warranted on Defendant's Exemption 3 claims.

B.      FOIA Exemptions 7 and 6

The FBI also properly invoked several subsections of Exemption 7 and Exemption 6 (in conjunction with Exemption 7(C)).  Exemption 7 protects "records or information compiled for law enforcement purposes" in six enumerated circumstances.  5 U.S.C. § 552(b)(7).  "To fall within Exemption 7, documents must first meet a threshold requirement: that the records were 'compiled for law enforcement purposes.'"  *Pub. Emps. For Envtl. Resp. v. Int'l Boundary & Water Comm'n* ("*PEER*"), 740 F.3d 195, 202-03 (D.C. Cir. 2014).  "[T]he term 'compiled' in Exemption 7 requires that a document be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption."  *Id.* at 203.  This is not a demanding standard.  Documents will be deemed compiled for law enforcement purposes if there is a "rational nexus between the investigation and one of the agency's law enforcement duties."  *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011).  And where, as here, the "agency's principal function is law enforcement, [the Circuit is] 'more deferential' to the agency's claimed purpose for the particular records."  *PEER*, 740 F.3d at at 203.

Exemption 7's threshold requirement is plainly satisfied here.  Indeed, there is a "rational nexus" between the records at issue and the FBI's law enforcement and national security functions, as the records concern the FBI's role, and the roles of its employees, in the ongoing SCO criminal investigation.  Hardy Decl. ¶¶ 36-37.  Because this threshold requirement is met, the analysis proceeds to the specific Exemption 7 subsections invoked by the FBI.

1.      FOIA Exemption 7(A)

Exemption 7(A) covers materials compiled for law enforcement purposes whose disclosure "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  This exemption entails a two-step analysis, focusing on (1) whether a law

11

enforcement proceeding is pending or prospective, and (2) whether release of the information at issue could reasonably be expected to cause some articulable harm.  *See Juarez v. DOJ*, 518 F.3d 54, 58 (D.C. Cir. 2008).

Here, the FBI has invoked Exemption 7(A) in a "limited fashion . . . to protect the names and numbers of FBI Special Agents and other employees assigned to the SCO investigation, the FBI units/divisions from which they were assigned, and their roles at SCO."[5]  Hardy Decl. ¶ 40.  The SCO investigation is currently pending, *see id.* ¶¶ 40-41, so the first prong of Exemption 7(A) is met.  And, regarding the second prong, the Hardy Declaration explains the potential harm of disclosure in detail:

> This information, if disclosed, could be reasonably expected to provide insight into the scope and scale of the SCO's investigation by revealing the size of the investigative team at a particular point in time.  Disclosure of the roles and home divisions of FBI personnel assigned to the SCO could reasonably be expected to reveal the nature of investigative areas of interest of the investigation and the specific resources dedicated to the particular areas of interest by revealing particular areas of expertise possessed by the FBI personnel chosen to support the SCO investigation.  Similarly, revealing the number of FBI personnel with particular skill-sets or areas of expertise assigned to the SCO could also reasonably be expected to reveal the SCO's investigative scope and strategies, and potential targets of the investigation.  Individuals targeted or potentially targeted in the investigation, as well as adversaries, could then employ countermeasures to conceal particular types of behavior, thwart SCO investigative efforts, and/or conceal, destroy, or adulterate evidence.

*Id.* ¶ 41.  The Hardy Declaration thus readily satisfies the Government's burden under Exemption 7(A) "by demonstrating that release of the requested information would reveal 'the size, scope and direction of [the] investigation' and thereby 'allow for the destruction or alteration of relevant evidence.'"  *Boyd v. Criminal Div. of DOJ*, 475 F.3d 381, 386 (D.C. Cir. 2007).  Summary judgment on Defendant's Exemption 7(A) claims is therefore warranted.

---

[5] The FBI invoked Exemption 7(A) as to the three pages it withheld in full.

2.      **FOIA Exemptions 7(C) And 6**

"FOIA Exemptions 6 and 7(C) seek to protect the privacy of individuals identified in certain agency records." *Am. Civil Liberties Union* ("*ACLU*") *v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). Exemption 7(C) authorizes withholding of records compiled for law enforcement purposes if their release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). This exemption requires the agency to balance the individual's privacy rights against the public interest in disclosure. *See DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989).

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). For this exemption to apply, the information at issue must be maintained in a government file and "appl[y] to a particular individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982). The agency then balances the individual's right to privacy against the public's interest in disclosure. *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).

Although the two exemptions employ a similar balancing analysis, Exemption 7(C) is broader than Exemption 6. Indeed, "Exemption 7(C) permits withholding of such records if disclosure would constitute an 'unwarranted' invasion of personal privacy, while Exemption 6 requires a '*clearly* unwarranted' invasion to justify nondisclosure," so "'Exemption 7(C) is more protective of privacy than Exemption 6' and thus establishes a lower bar for withholding material." *ACLU*, 655 F.3d at 6 (quoting *DOD v. FLRA*, 510 U.S. 487, 496 n.6 (1994)); *see also Roth v. DOJ*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (noting that Exemption 7(C) is "somewhat broader" than Exemption 6, and thus if withheld information passes Exemption 7(C)'s threshold

requirement of having been "compiled for law enforcement purposes," there is "no need to consider Exemption 6 separately").

Courts broadly construe the privacy interests protected by Exemptions 6 and 7(C). *See Reporters Comm. for Freedom of Press,* 489 U.S. at 763 (noting that "privacy encompass[es] the individual's control of information concerning his or her person"). That strong interest is set against the fact that "the only relevant public interest in the . . . balancing analysis [is] the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *FLRA*, 510 U.S. at 497 (citation and alterations omitted).

The analysis differs slightly with respect to government employees and third parties. This Circuit has "adopted a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003). Even then, "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred' in order to gain disclosure." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004)); *see also Schrecker*, 349 F.3d at 661. ("On the privacy side of the ledger, our decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants.").

While government employee names are not subject to a categorical exception, there is still a strong presumption against release. *See Cooper v. DOJ*, 169 F. Supp. 3d 20, 36 (D.D.C.

2016).  "Generally, government employees and officials, especially law enforcement personnel, have a privacy interest in protecting their identities because disclosure 'could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs.'" *Moore v. Bush*, 601 F. Supp. 2d 6, 14 (D.D.C. 2009) (quoting *Halpern v. FBI*, 181 F.3d 279, 296-97 (2d Cir. 1999); *see also Kurdyukov v. U.S. Coast Guard*, 578 F. Supp. 2d 114, 128 (D.D.C. 2008) ("The employee whose name is withheld certainly has a privacy interest in avoiding the disclosure of his or her name"); *see also Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting an individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address.").  Rather, "[i]t is the requester's obligation to articulate a significant public interest sufficient to outweigh an individual's privacy interest." *Kurdyukov*, 578 F. Supp. 2d at 128.

The "D.C. Circuit has time and again rejected the suggestion that the disclosure of names in government investigative files can somehow provide insight into the workings of the government." *Brown v. EPA*, 384 F. Supp. 2d 271, 279 (D.D.C. 2005); *see also Cooper*, 169 F. Supp. 3d at 37 (public interest must be "more specific than having the information for its own sake").  Instead, the "requestor must produce evidence that would warrant a belief by a reasonable person" that impropriety had occurred and "also must seek information that is 'probative of an agency's behavior or performance.'" *Cooper*, 169 F. Supp. 3d at 37.  Absent such a showing, courts routinely affirm redactions of government employee names. *See, e.g., Schrecker,* 349 F.3d at 661; *Baez v. DOJ*, 647 F.2d 1328, 1339 (D.C. Cir. 1980) (affirming the application of Exemption 7(C) "to the names of lower and middle-level FBI personnel"); *Giovanetti v. FBI*, 174 F. Supp. 3d 453, 461 (D.D.C. 2016) (names of FBI agents are properly withheld absent "evidence sufficient to warrant a belief by a reasonable person that the alleged

Government impropriety might have occurred") (quoting *Favish*, 541 U.S. at 159); *Cooper*, 169 F. Supp. 3d at 37-38.

Here, the FBI has properly withheld under Exemptions 7(C) and 6 names and identifying information of three categories of individuals: (1) FBI special agents and support personnel; (2) third parties merely mentioned in responsive documents; and (3) non-FBI federal government personnel.  *See* Hardy Decl. ¶¶ 42-55.  Summary judgment as to Defendants' Exemption 7(C) and 6 claims is therefore warranted.[6]

### i.      Names And Identifying Information Of FBI Special Agents And Support Personnel

Under the category labeled (b)(6)-1 and (b)(7)(C)-1, "the FBI protected the names and/or identifying information of FBI Special Agents ("SAs"), including SAs assigned to the SCO investigation," who are "responsible for conducting interviews and compiling information, reporting on the status of the investigation, and engaging in a range of other investigative activities."  *Id.* ¶ 46.  The FBI determined that SAs maintain "substantial privacy interests in information about them in criminal investigative files," because "[p]ublicity (adverse or otherwise) regarding any particular investigation to which [SAs] have been assigned may seriously prejudice their effectiveness in conducting other investigations."  *Id.*  The agency further found that SAs have "privacy interests in being free from unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the FBI."  *Id.*  Moreover, the FBI determined that "publicity associated with the release of an agent's identity in connection with a particular investigation could trigger hostility toward a particular agent" by individuals who have been subject to law enforcement actions and

---

[6] The FBI invoked Exemptions 7(C) and 6 as to the three pages it withheld in full, as well as Bates-numbered pages FBI(17-cv-2682)-2, -3, -5, -6, -8, -9, and -10.

who "may seek revenge on the agents and other federal employees involved in a particular investigation." *Id.* These are unquestionably valid privacy interests for purposes of Exemptions 7(C) and 6. *See Schrecker*, 349 F.3d at 666 ("[P]ersons involved in law enforcement investigations—witnesses, informants, and the investigating agents—'have a substantial interest in seeing that their participation remains secret.'"); *see also Baez*, 647 F.2d at 1339; *Kurdyukov*, 578 F. Supp. 2d at 128.

For similar reasons, the FBI also withheld under this category "the names of FBI support employees" on the ground that they maintained "substantial privacy interests in not having their identities disclosed." Hardy Decl. ¶ 47. These individuals "were, and possibly are, in positions of access to information regarding official law enforcement investigations, and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released." *Id.*

Meanwhile, the FBI concluded that "no public interest would be served by disclosing the identities of FBI SAs and support employees to the general public because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities." *Id.* ¶ 48; *see Brown*, 384 F. Supp. 2d at 279 ("the D.C. Circuit has time and again rejected the suggestion that the disclosure of names in government investigative files can somehow provide insight into the workings of the government").

Because these individuals' privacy interests outweigh the non-existent public interest in disclosure, the FBI properly withheld their names and/or identifying information under Exemptions 7(C) and 6. *See Nat'l Ass'n of Retired Fed. Emps.*, 879 F.2d at 879  (noting that privacy interests always prevail in the Exemption 6 balancing analysis if there is no public

17

interest in disclosure because "something, even a modest privacy interest, outweighs nothing every time").

### ii.   Names And Identifying Information Of Third Parties Merely Mentioned In Responsive Documents

Under the category labeled (b)(6)-2 and (b)(7)(C)-2, "the FBI withheld the names and identifying information of third parties merely mentioned in the responsive documents."  Hardy Decl. ¶ 50.  The FBI determined that these "third parties maintain legitimate privacy interests in information linking them to a particular investigation or to the FBI generally because the public could draw negative conclusion about or devote unwanted attention toward the individuals if their identities were publicly disclosed."  *Id.*  By contrast, there is "no public interest in the disclosure of their identities, which would not significantly increase the public's understanding of FBI operations and activities."  *Id.* ¶ 51.  Thus, the FBI properly withheld this information under Exemptions 7(C) and 6.  *See Schrecker*, 349 F.3d at 661 (D.C. Circuit has "adopted a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity'").

### iii.   Names And Identifying Information Of Non-FBI Federal Government Personnel

Under the category labeled (b)(6)-3 and (b)(7)(C)-3, "the FBI protected the names and/or identifying information of personnel from federal government agencies other than the FBI mentioned in the responsive records in relation to FBI activities."  Hardy Decl. ¶ 53.  The agency's "rationale for protecting the identities of these government employees is the same as the rationale for protecting the identities of FBI employees" (discussed *supra*)—namely, "these government employees maintain substantial privacy interests just as FBI employees do."  *Id.*

18

And just as with the FBI employees, "there is no public interest to be served by the disclosure of these employees' names and/or identifying information because their identities, by themselves, would not significantly increase the public's understanding of the FBI's operations and activities." *Id.* ¶ 54. This information was therefore properly withheld under Exemptions 7(C) and 6.

### 3.     FOIA Exemption 7(E)

Finally, the FBI properly invoked Exemption 7(E), which protects information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell*, 646 F.3d at 42.

Here, the FBI has properly withheld four categories of information under Exemption 7(E): (1) the location and identity of FBI and joint units; (2) investigate targets and strategies of the FBI Counterintelligence Division; (3) internal FBI secure email addresses; and (4) specific counterintelligence techniques utilized to conduct national security investigations. *See* Hardy Decl. ¶¶ 58-61. Summary judgment as to Defendants' Exemption 7(E) claims is therefore warranted.[7]

---

[7] The FBI invoked Exemption 7(E) as to the three pages it withheld in full, as well as Bates-numbered pages FBI(17-cv-2682)-1, -2, -3, -5, and -6.

### i.   Location And Identity Of FBI And Joint Units

Under the category labeled (b)(7)(E)-1, "the FBI protected the home units/divisions of FBI employees assigned to the SCO and the number of FBI personnel assigned to the SCO's investigation." *Id.* ¶ 58.  As discussed above with respect to Exemption 7(A), "revealing this information could reasonably be expected to reveal the SCO's investigative scope and strategies, and potentially tip off targets." *Id.*  "Individuals targeted or potentially targeted in the investigation, as well as adversaries, could then employ countermeasures to conceal particular types of behavior, thwart SCO investigative efforts, and/or conceal, destroy, or adulterate evidence." *Id.*  These are valid grounds for invoking Exemption 7(E).  *See Miller v. DOJ*, 562 F. Supp. 2d 82, 124 (D.D.C. 2008) (information is properly withheld under Exemption 7E if it would allow a criminal to anticipate future FBI strategy); *Al-Turki v. DOJ*, 175 F. Supp. 3d 1153, 1201 (D. Colo. 2016) (affirming withholding of information identifying an FBI unit on the basis that this information would allow individuals to employ countermeasures); *Blackwell v. FBI*, 680 F. Supp. 2d 79, 92 (D.D.C. 2010) (upholding Exemption 7(E) claim where "disclosure potentially would aid others in circumventing future FBI investigations"), *aff'd*, 646 F.3d 37 (D.C. Cir. 2011); *Perrone v. FBI*, 908 F. Supp. 24, 28 (D.D.C. 1995) (same).

### ii.   Investigative Targets And Strategies Of The FBI Counterintelligence Division

Under the category labeled (b)(7)(E)-2, "the FBI protected investigative targets and strategies of the FBI's Counterintelligence Division."  Hardy Decl. ¶ 59.  Specifically, the FBI withheld portions of an email "discussing the structure and organization of the FBI's Counterintelligence Division, and its methods for conducting counterintelligence investigations." *Id.*  The FBI determined that "[r]evealing the broader investigative focuses of the division's counterintelligence efforts would reveal the scope of the FBI's counterintelligence program and

the strategies it plans to pursue in preventing and disrupting criminal and foreign intelligence activities." *Id.* "Release of this type of information would allow criminals and foreign agents to gauge the FBI's strengths and weakness within certain areas of the counterintelligence arena and structure their activities in a manner that avoids detection and disruption by the FBI." *Id.* "For example, if foreign agents knew where the FBI was focusing resources in the Counterintelligence Division, they could better position themselves to attempt to thwart the FBI's counterintelligence strategies and circumvent the law." *Id.* Such information regarding agency "resource allocation" and priorities is protected by Exemption 7(E). *See Allard K. Lowenstein Int'l Human Rights Project v. DHS*, 626 F.3d 678, 682 (2d Cir. 2010); *Blackwell*, 680 F. Supp. 2d at 92; *Perrone*, 908 F. Supp. at 28.

### iii. Internal FBI Secure Email Addresses

Under the category labeled (b)(7)(E)-3, "the FBI protected secure internal e-mail addresses" on the ground that "[r]elease of this type of information could allow adversaries to exploit the FBI's Information Technology system to gain unauthorized access to, view and manipulate data on, or otherwise interfere with the FBI's unclassified but non-public IT system in an effort to circumvent the law." Hardy Decl. ¶ 60. The FBI further determined that "release of this information would allow individuals to disrupt official business and could subject FBI employees to harassing emails, greatly reducing the FBI's ability to enforce the law." *Id.* Given these concerns, this information was properly withheld under Exemption 7(E). *See Blackwell*, 646 F.3d at 42 (Exemption 7(E) protected information that could potentially expose the FBI's "computer forensic vulnerabilities to potential criminals").

### iv. Specific Counterintelligence Techniques Utilized To Conduct National Security Investigations

Under the category labeled (b)(7)(E)-4, "the FBI protected certain counterintelligence techniques requiring the approval of a Deputy Assistant Director." Hardy Decl. ¶ 61. As the FBI explained, the agency "has created limits on when these techniques can be employed and has established requirements for varying degrees of approval to ensure the use of these techniques and procedures receive the appropriate level of oversight," and "[t]hese internal investigative limitations have not been released to the public." *Id.* "Disclosure of this information could increase the risk of circumvention of FBI investigative techniques." *Id.* For example, "[a] person considering committing a crime or act of espionage, or attempting to evade detection by the FBI, knowing that certain investigative techniques are or are not prohibited without the approval of high-ranking FBI leaders, could judge the amount of administrative burden associated with the technique and thus the likeliness and timing of its use." *Id.* "Similarly, knowledge that the use of a specific technique in a particular circumstance will not be approved absent certain conditions could be exploited by someone seeking to evade detection." *Id.* "Criminals or foreign agents could use this information to time and structure their activities in a manner that avoids triggering the FBI's ability to utilize these techniques and strategies, thus depriving the FBI of their use." *Id.* Here again, disclosure of such information, which could well allow criminals to anticipate and thwart future FBI strategy, is plainly protected by Exemption 7(E). *See Miller*, 562 F. Supp. 2d at 124; *Blackwell*, 680 F. Supp. 2d at 92; *Perrone*, 908 F. Supp. at 28.

## III. The FBI Released All Reasonably Segregable Information

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this

subsection," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions," *Mead Data Ctr. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *Kurdukov*, 578 F. Supp. 2d at 128.  This provision does not, however, require disclosure of records in which the non-exempt information that remains is meaningless.  *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 221 (D.D.C. 2005) (concluding that no reasonably segregable information existed because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words.").

The FBI has satisfied this standard.  As explained in the Hardy Declaration, the "FBI conducted a document-by-document, line-by-line review of the records" and produced "[a]ll reasonably segregable, nonexempt portions" to Plaintiff.  Hardy Decl. ¶ 25.  "[E]ach responsive page was individually examined to identify non-exempt information that could be reasonably segregated and released."  *Id.* ¶ 62.  As noted, the FBI located a total of 19 pages of responsive records; released eight pages in full and eight pages in part; and withheld three pages in full.  *Id.* It released the eight pages with redactions because it determined that they contained a "mixture of non-exempt information that could be segregated for release; exempt information; and information that while not exempt consists merely of words or phrases that if segregated and released would include no information content."  *Id.* ¶ 63.  And it withheld the three pages in full after determining that "[a]ll information on these three pages is exempt under one or more of the cited FOIA exemptions, or if not exempt itself, is inextricably intertwined with exempt information such that it cannot be segregated and released without triggering a harm protected by one of the cited FOIA exemptions."  *Id.* ¶ 64.

Defendant is therefore entitled to summary judgment on the issue of segregability.  *See Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776-77 (D.C. Cir. 2002) (agency demonstrated there was no reasonably segregable non-exempt information where it submitted affidavit showing that agency had conducted line-by-line review of each document withheld in full).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion for summary judgment.

Date: June 13, 2018                          Respectfully submitted,

                                             CHAD A. READLER
                                             Acting Assistant Attorney General

                                             JESSIE K. LIU
                                             United States Attorney

                                             ELIZABETH J. SHAPIRO
                                             Deputy Branch Director

                                             */s/ Nikhel S. Sus*
                                             Nikhel S. Sus (D.C. Bar No. 1017937)
                                             Trial Attorney
                                             U.S. Department of Justice
                                             Civil Division, Federal Programs Branch
                                             20 Massachusetts Avenue N.W.
                                             Washington, D.C. 20530
                                             Tel.:   (202) 514-2071
                                             Fax:    (202) 616-8470
                                             Email: nikhel.s.sus@usdoj.gov

                                             *Counsel for Defendant*