**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br> Defendant. | Case No. 17-cv-02682 (CRC) |

**MEMORANDUM OPINION**

In the spring of 2017, former FBI Deputy Assistant Director Peter Strzok was assigned to join Special Counsel Robert Mueller's investigation of Russian interference in the 2016 presidential election. Just a few months later, Mueller removed the veteran counterintelligence agent from the investigation and the FBI reassigned him to its Human Resources Division. Media outlets revealed why that December: Strzok had exchanged text messages with an FBI colleague suggesting a potential bias against then-candidate Donald Trump.

Suspecting something was amiss, Plaintiff Judicial Watch, Inc. submitted a Freedom of Information Act ("FOIA") request to the FBI in August 2017—before news of the texts broke—seeking records relating to Strzok's assignment to and from the Mueller investigation. The FBI responded by producing all or parts of 16 pages of emails and withholding three other pages based on several overlapping FOIA exemptions. Dissatisfied with the Bureau's response, Judicial Watch sued. Both sides have now moved for summary judgment, focusing entirely on the adequacy of the FBI's records search. For the reasons that follow, the Court will deny the government's motion for summary judgment and grant Judicial Watch's cross motion.

**I. Background**

Judicial Watch's FOIA request asked for the following records:

> Any and all records regarding, concerning, or related to the assignment of FBI Supervisor Peter Strzok to the special counsel's investigation led by former Director Robert Mueller.
>
> Any and all records regarding, concerning, or related to the reassignment of FBI Supervisor Peter Strzok from the special counsel's investigation to another position within the FBI.
>
> This request includes, but is not limited to, any and all forms SF-50 and/or SF-52, as well as any and all related records of communication between any official, employee, or representative of the FBI and any other individual or entity.

Compl., ECF No. 1, ¶ 5.

In response, the FBI searched Agent Strzok's personnel file and records maintained by its Human Resources Division and Central Records System. First Declaration of David M. Hardy ("First Hardy Decl."), ECF No. 7-1, ¶¶ 18–19, 21. These searches produced zero responsive records. Id. The agency then searched Strzok's email account using the terms "assignment," "reassignment," and "appointment" in conjunction with the phrase "special counsel." Id. ¶ 22. This search produced 19 pages of responsive emails and attachments—mostly congratulatory notes from colleagues and discussions about the logistics of the transfer. Id. ¶ 25. The FBI released all or parts of 16 pages and fully withheld three. Id.

Judicial Watch filed suit in December 2017 and both parties have now moved for summary judgment. Judicial Watch challenges only the adequacy of the FBI's search. Judicial Watch Mot. Summ. J. ("JW MSJ"), ECF No. 9, at 2.

II. **Legal Standard**

FOIA cases are typically resolved on summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under FOIA, government agencies must adequately search for responsive records. Rodriguez v. U.S. Dep't of Def., 236 F. Supp. 3d 26, 34 (D.D.C. 2017). When a FOIA requester challenges the adequacy of an agency's search, the agency must show "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011)) (citation, quotation marks omitted). Courts analyze the "appropriateness of the methods" used by the agency rather than the fruits of the search. Francis v. U.S. Dep't of Justice, 267 F. Supp. 3d 9, 12 (D.D.C. 2017). "Although a requester must reasonably describe the records sought, an agency also has a duty to construe a FOIA request liberally." Nation Magazine, Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995) (alteration, citation, and quotation marks omitted). More simply, while agencies "need not turn over every stone, [] they must conduct a 'good faith, reasonable search of those systems of records likely to possess requested records.'" Freedom Watch, Inc. v. Nat'l Sec. Agency, 220 F. Supp. 3d 40, 44 (D.D.C. 2016) (quoting Cunningham v. U.S. Dep't of Justice, 40 F. Supp. 3d 71, 83 (D.D.C. 2014)).

"An agency may prove the reasonableness of its search through a declaration by a responsible agency official[.]" Cunningham, 40 F. Supp. 3d at 83. "Agency declarations, especially from individuals coordinating the search, are afforded 'a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" Freedom Watch, 220 F. Supp. 3d at 44 (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Indeed, courts can award summary judgment based solely on agency affidavits and declarations that are "relatively detailed and non-conclusory." Id. at 45.

**III. Analysis**

Judicial Watch challenges the adequacy of the FBI's search on four grounds. First, it says the FBI's failure to uncover additional responsive documents is facially implausible. Second, it claims the Bureau used unreasonably narrow electronic search terms. Third, it argues the agency should have searched the email accounts of other FBI officials besides Agent Strzok. And finally, it challenges the FBI's failure to search certain electronic media used within the agency, most notably text messages. For the reasons to follow, the Court sides mainly with Judicial Watch and will order the FBI to conduct a broader search.

   A. <u>Facial Implausibility</u>

Judicial Watch contends that, given the prominence of Deputy Assistant Director Strzok's assignment and removal from the Mueller investigation, the paucity of records uncovered by the search proves that the search was inadequate. This argument largely overlaps with Judicial Watch's complaint that the FBI's search was too narrow, which the Court takes on below. The only separate point to make here is that courts generally consider the absence of responsive documents in assessing the adequacy of a search only where the plaintiff points to a particular document the agency should have, but failed to, disclose. See <u>Citizens for Responsibility & Ethics in Wash. v. U.S. Gen. Servs. Admin.</u> ("<u>CREW</u>"), No. 18-cv-377, 2018 WL 6605862, at *3 (D.D.C. Dec. 17, 2018) (Cooper, J.) (citing <u>Iturralde v. Comptroller of Currency</u>, 315 F.3d 311, 315 (D.C. Cir. 2003)).

Here, Judicial Watch does point to specific documents that were not uncovered in the search, but the FBI adequately explains why that was so. Judicial Watch specifically requested

4

two government-wide personnel forms—the SF-50 and SF-52[1]—related to Agent Strzok's appointment and reassignment, Compl. ¶ 5, and argues that "even if a form such as an SF-50 was not created," other personnel paperwork "must exist," JW MSJ at 4. But the FBI gives three credible reasons why these forms or similar documentation did not turn up in the search. First, "Strzok's assignment to and from the [Special Counsel's Office] was considered a 'job assignment' rather than a formal personnel action . . . and thus formal personal [sic] paperwork was not required." FBI Opp'n, ECF No. 11, at 2 (citing First Hardy Decl. ¶ 18). Second, Special Counsel Mueller removed Agent Strzok from the investigation in person and thus did not document his decision. Id. And third, the FBI does not have access to the Special Counsel's Office's emails or other records even if that office did create responsive records. Id.

Agency declarations are afforded "a presumption of good faith" that cannot be defeated by "speculative claims about the existence and discoverability of other documents." Freedom Watch, 220 F. Supp. 3d at 44 (quoting SafeCard Servs., 926 F.2d at 1200). Because Judicial Watch offers no reason to doubt the FBI's explanations for not locating those documents in the search, the presumption applies here. The Court declines to invalidate the search simply because it returned a seemingly small number of documents.

B. Search Terms

Judicial Watch next argues that the FBI's electronic records search was too narrow because it used only the key words "special counsel" and did not include "Mueller." The agency responds that it properly exercised its discretion to craft a reasonable search by concluding that

---

[1] Standard Form ("SF") 50 is a Notification of Personnel Action and the SF-52 is a Request for Personnel Action.

any document containing "Mueller" was reasonably likely to also include "special counsel." The Court is not convinced.

An agency "has a duty to construe a FOIA request liberally." Nation Magazine, 71 F.3d at 890. This duty includes "searching for 'synonyms' and 'logical variations' of the words used in the request," and prohibits agencies from "fish[ing] myopically for a 'direct hit on the records' using only 'the precise phrasing' of the request." CREW, 2018 WL 6605862, at *5 (quoting Gov't Accountability Project v. U.S. Dep't of Homeland Sec., 335 F. Supp. 3d 7, 12 (D.D.C. 2018) (Cooper, J)). This Court has noticed a pattern of this type of myopia plaguing FOIA reviewers in some of our federal agencies. For example, in CREW, which involved a challenge to the General Services Administration's search for records concerning the FBI's J. Edgar Hoover headquarters building, the Court had to order the agency to expand its initial search beyond the precise term used in the request—"FBI headquarters"—to include the oft-used synonyms "Hoover Building" and "JEH" Building. Id. at *5. Similarly, in Bagwell v. U.S. Department of Justice, 311 F. Supp. 3d 223 (D.D.C. 2018) (Cooper, J.), a suit over documents related to the Penn State child sex abuse scandal, the Court required the Executive Office of U.S. Attorneys to search for the vernacular terms "Penn State" and "PSU" in addition to the more formal one—"Pennsylvania State University"—that appeared in the FOIA request. Id. at 229–30; see also Gov't Accountability Project, 335 F. Supp. 3d at 12 (likening the Department of Homeland Security's FOIA search to a game of Battleship because it targeted only the precise terms used in the request). And this is not a new problem. See, e.g., Summers v. U.S. Dep't of Justice, 934 F. Supp. 458, 461 (D.D.C. 1996) (requiring FBI to use the search terms "appointment" and "diary" as commonly used terms to describe the "commitment calendars" requested by the plaintiff).

Here, too, the FBI's search was overly cramped. Notwithstanding that Judicial Watch's request referred to Mueller by name, Compl. ¶ 5, the Bureau searched only for the term "special counsel." But surely one would expect that Agent Strzok and other FBI personnel might use the Special Counsel's name—"Mueller"—rather than his title when discussing Strzok's assignment to the Russia investigation, especially in informal emails. Another logical variation on "special counsel" is its commonly used acronym "SCO," which appears to be used within the Special Counsel's Office itself, as reflected by documents that the FBI uncovered and produced to Judicial Watch. See FOIA Production, ECF No. 9-2, at 4, 5–7, 8–10; see also, e.g., Government's Sentencing Memorandum at 1, United States v. Cohen, No. 18-cr-850-WHP (S.D.N.Y. Dec. 7, 2018), ECF No. 15. Tellingly, the government also uses the acronym "SCO" in its briefing in this case. See FBI MSJ, ECF No. 7, at 3; FBI Opp'n at 1. The FBI's failure to search for these obvious synonyms and logical variations ran afoul of its obligation to construe FOIA requests liberally and conduct a search reasonably likely to produce all responsive documents. It must therefore conduct a more thorough canvassing using these particular search terms and any others that it deems appropriate in light of the Court's ruling.[2]

C. Email Accounts

Judicial Watch next complains that the FBI improperly limited its email search to Agent Strzok's account, neglecting those of other FBI personnel who may have independently

---

[2] The Court rejects Judicial Watch's alternative argument that the FBI could have instead manually searched Strzok's emails on the days surrounding his assignment and reassignment. JW MSJ at 4–5. FOIA expressly permits agencies to conduct automated searches using targeted search terms rather than manual searches. 5 U.S.C. § 552(a)(3)(D). The key, however, is that those targeted searches must be reasonably calculated to capture responsive material. Freedom Watch, Inc. v. Nat'l Sec. Agency, 783 F.3d 1340, 1345 (D.C. Cir. 2015). As the Court has concluded, the totality of search terms used here were not.

discussed his assignment and removal.  The Court again agrees with Judicial Watch that the Bureau fell short of its FOIA obligations in this regard.

When an agency receives a FOIA request, it must search all locations that are reasonably likely to contain responsive records.  See Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  Here, Judicial Watch requested "any and all" records related to Agent Strzok's assignment to and reassignment from the Mueller investigation.  Compl. ¶ 5.  And the request specifically called for "records of communication between any official, employee, or representative of the FBI and any other individual or entity."  Id.  When it came to emails, the FBI searched only Strzok's account.  Surely, however, other people within the Bureau are likely to have discussed the assignment or reassignment via email without having shared those discussions with Strzok.  Deputy Assistant Director Strzok was a highly regarded counterintelligence agent who had supervised the Bureau's investigation into Hillary Clinton's use of a personal email server during her tenure as Secretary of State.  The decision to then assign him to investigate the Trump campaign likely generated discussion among FBI leadership as well as general interest within the agency.  The same is true for the extraordinary circumstances that led to his removal from the Mueller team and reassignment to the agency's Human Resources Division.  Common sense suggests that some of this discussion likely took place in emails exchanged by Agent Strzok's supervisors and other FBI officials involved in those decisions.

The FBI's defense of its email search comes up short.  It first contends that limiting the search to Strzok's emails was "eminently reasonable" because he was the "named subject" of the request.  FBI Opp'n at 3 (citing Second Declaration of David M. Hardy ("Second Hardy Decl."), ECF No. 12-1, ¶ 7).  That misconstrues the request.  While the subject matter of the requested

records was Strzok's assignments, the request specifically called for "any and all" communications among FBI personnel regarding the assignments. Because one would naturally expect others to have engaged in those communications, including without looping in Strzok, it was not reasonable (let alone eminently so) to search only Agent Strzok's emails.

The FBI also argues it was not obligated to expand the email search because the fruits of the search of Agent Strzok's account—a mere 19 pages of emails—did not reveal "leads" that others may have separately discussed his appointment or reassignment. Id. (citing Second Hardy Decl. ¶ 7). This argument conflates the agency's obligation to dig deeper when a proper initial search produces records that suggest other responsive records are likely to exist in places that were not searched, with its duty to design a reasonably comprehensive search in the first place. The FBI failed to do the latter for the reasons explained above. Moreover, the purported absence of "leads" in Agent Strzok's emails does not suggest the absence of other responsive emails: it comes as no surprise that colleagues who communicated with Strzok about the assignment might not indicate to him that they were also communicating with others about the same topic.

Lastly, the Bureau asserts that its search of the agency's Central Records Systems ("CRS") bolsters the reasonableness of its email search. But the CRS search was limited to Strzok's personnel file. First Hardy Decl. ¶ 21; Second Hardy Decl. ¶ 6. Why searching Strzok's personnel file would be likely to turn up communications discussing the assignment (especially emails among other FBI personnel), the agency does not explain. The Court can fathom no reason.

The government is no doubt correct that "the '[agency] is in the best position' to determine custodians most likely to have relevant records." FBI Opp'n at 3 (quoting JW MSJ at 4). But that truism—and the deference that accompanies it—does not insulate a search that

overlooks locations where responsive materials are reasonably likely to be found. Because the FOIA request here called for "any and all" correspondence involving discussions among FBI personnel regarding Agent Strzok's assignment to and reassignment from the Mueller investigation, and because one would reasonably expect that others besides Strzok exchanged emails on the topic, the agency erred by confining its search to Strzok's email account. Accordingly, the Court will order the agency to conduct a further email search. The search shall include the email accounts of any of Agent Strzok's superiors or other Bureau officials who were involved in the decision to assign him to the Special Counsel's Office or the decision to reassign him to the FBI's Human Resources Division after his removal from the Mueller investigation. The Court will leave it to the good graces of the Bureau to determine who those officials are.

    D.  <u>Other Electronic Systems</u>

Finally, Judicial Watch challenges the FBI's failure to search other electronic communications systems used by Agent Strzok and his colleagues, such as text messages, instant messages, and personal email accounts. The search should have encompassed these other media, Judicial Watch says, because "it is undisputed that Strzok and his colleagues used a variety of other electronic media to conduct government business." JW MSJ at 5 (citing Office of the Inspector Gen., Dep't of Justice, <u>A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election</u> 395–430 (June 2018), https://www.justice.gov/file/1071991/download). While FBI personnel may have used such other media, the Bureau counters that "there is no indication that these systems are reasonably likely to contain records responsive to *Plaintiff's* specific FOIA request[.]" FBI Opp'n at 6. The Court disagrees, at least with respect to Agent Strzok's documented use of text messages. Given that use, it strikes the Court as reasonably likely that he discussed his assignment to the Special

Counsel's Office in text messages—which again is the standard for assessing an agency's selection of search locations. As for other custodians whose email accounts the FBI will now search pursuant to this ruling, the Court will leave it to the Bureau to determine in the first instance whether a search of other media is warranted.

## IV. Conclusion

For the foregoing reasons, the Court will deny the FBI's motion for summary judgment and will grant Judicial Watch's cross motion. A separate Order shall accompany this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: March 11, 2019